Peters, P.J.
Appeal from an order of the Supreme Court (Muller, J.), entered March 20, 2013 in Clinton County, which granted plaintiffs motion for a temporary restraining order.
Following a highly publicized trial, plaintiff was convicted of the murder of his father and attempted murder of his mother while they slept in their home. When plaintiff learned that defendant was planning to broadcast a movie depicting a dramatized version of the events surrounding the murder and his subsequent prosecution, he commenced this action for injunctive relief asserting that the use of his name in connection with the movie violated Civil Rights Law §§50 and 51. Plaintiff’s subsequent motion for a temporary restraining order enjoining the impending broadcast of the movie was granted by Supreme Court. Defendant appeals.[1],[2]
We reverse. The temporary restraining order issued here constitutes an unconstitutional prior restraint on speech. “A ‘prior restraint’ on speech is ‘a law, regulation or judicial order that suppresses speech ... on the basis of the speech’s content and in advance of its actual expression’ ” (Ash v Board of Mgrs. of the 155 Condominium, 44 AD3d 324, 324 [2007], quoting United States v Quattrone, 402 F3d 304, 309 [2005]; see Alexander v United States, 509 US 544, 550 [1993]; Metropolitan Opera Assn., Inc. v Local 100, Hotel Empls. & Rest. Empls. Intl. Union, 239 F3d 172, 176 [2d Cir 2001]). It is well settled that “prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights” (Nebraska Press Assn. v Stuart, 427 US 539, 559 [1976]; see CBS Inc. v Davis, 510 US 1315, 1317 [1994]; New York Times Co. v United States, 403 US 713, 723-724 [1971] [Douglas, J., concurring]). As explained by the United States Supreme Court, “a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them . .. . beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheel *1266 ing censorship are formidable” (Southeastern Promotions, Ltd. v Conrad, 420 US 546, 559 [1975] [citation omitted]). Although the prohibition against prior restraint is not absolute, any restraint on speech comes with “a ‘heavy presumption’ against its constitutional validity” (Organization for a Better Austin v Keefe, 402 US 415, 419 [1971], quoting Carroll v President & Comm’rs of Princess Anne, 393 US 175, 181 [1968]; see Bantam Books, Inc. v Sullivan, 372 US 58, 70 [1963]), and may be imposed only in the most “exceptional cases” (Near v Minnesota ex rel. Olson, 283 US 697, 716 [1931]; accord CBS Inc. v Davis, 510 US at 1317; see Miami Herald Publishing Co. v Tornillo, 418 US 241, 259 [1974] [White, J., concurring] [noting that First Amendment jurisprudence erects a “virtually insurmountable barrier” against the issuance of a prior restraint]). Censorship in advance of publication will be constitutionally tolerated only upon “a showing on the record that such expression will immediately and irreparably create public injury” (People ex rel. Arcara v Cloud Books, 68 NY2d 553, 558 [1986]; see CBS Inc. v Davis, 510 US at 1317; Near v Minnesota, 283 US at 715-716; Matter of Rockwell v Morris, 12 AD2d 272, 277-278 [1961], affd 10 NY2d 721 [1961]).
Plaintiff has failed to show such immediate and irreparable public harm. “Romeo Killer: The Christopher Porco Story” purports to depict the events leading up to and surrounding plaintiffs murder trial, a matter of significant public interest. Its broadcast would not create the type of imminent and irreversible injury to the public that would warrant the extraordinary remedy of prior restraint. Rather, any alleged harm or injury flowing from the content of the film would be limited to plaintiff alone. That portions of the movie may be fictionalized, dramatized or embellished does not constitute a sufficient basis for the imposition of a prior restraint enjoining its broadcast (see Organization for a Better Austin v Keefe, 402 US at 418; Near v Minnesota, 283 US at 714-715, 718-719; Schermerhorn v Rosenberg, 73 AD2d 276, 288 [1980]). While judicial redress following publication is available if it is ultimately proven that defendant abused its rights of speech,[3] it was constitutionally impermissible under these circumstances to forbid that speech prior to its actual expression (see Matter of Providence Journal Co., 820 F2d 1342, 1350-1351 [1st Cir 1986]; Ruffin-Steinback v de Passe, 17 F Supp 2d 699, 701 [1998]; Rosemont Enters. v McGraw-Hill Book Co., 85 Misc 2d 583, 586 [1975]; see generally CBS Inc. v Davis, 510 US at 1317-1318; New York Times *1267 Co. v United States, 403 US at 723-724; cf. Rose v Levine, 37 AD3d 691, 693 [2007]; Weil v Johnson, 2002 NY Slip Op 50513[U], *10-11 [2002]). Accordingly, the temporary restraining order must be vacated.
In light of our determination, we need not reach defendant’s remaining assertions.
Garry, Rose and Egan, Jr., JJ., concur. Ordered that the order is reversed, on the law, without costs, motion denied and temporary restraining order vacated.

. This Court granted defendant’s motion to vacate the temporary restraining order pending the outcome of this appeal (2013 NY Slip Op 71188[U] [2013]).

. Supreme Court’s order granting the temporary restraining order was not ex parte, as it decided a motion made on notice (see CPLR 2211, 5701 [a] [2] [i]). Accordingly, it is appealable as of right.

. We decline defendant’s invitation to sua sponte dismiss plaintiff’s complaint as meritless.